UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDRE L. SHEFFIELD,

               Plaintiff,

v.                                       Case No. 3:24-cv-93-MMH-SJH

JOHN DOE #1, et al.,

               Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Andre L. Sheffield, an inmate in the custody of the Florida Department of Corrections (FDC), initiated this action on January 18, 2024,[1] by filing a Complaint for Violation of Civil Rights (Complaint; Doc. 1).[2] He is proceeding on a Second Amended Complaint (SAC; Doc. 83) with attachments (Doc. 83-1). In the SAC, he names the following Defendants: (1) Sergeant Austin Fowler, (2) Sergeant Patrick Williams, (3) Sergeant D. Robinson, (4) Warden Davis Allen, (5) Colonel Matthew Handley, (6) Dr. Angel Acevedo, and (7) three John Does. See SAC at 3–5. Sheffield raises claims of excessive force

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

and deliberate indifference to his serious medical need, as well as state law claims. See id. at 12–13.

This matter is before the Court on Defendants Sergeant Fowler, Sergeant Williams, Sergeant Robinson, Warden Allen, and Colonel Handley's (collectively Corrections Defendants) Motion to Dismiss. See Motion to Revoke In Forma Pauperis Status and to Dismiss (Motion to Dismiss; Doc. 86). In support of the Motion to Dismiss, the Corrections Defendants have submitted exhibits. See Docs. 86-1 through 86-3. Sheffield filed a response in opposition to the Motion, see Plaintiff Brief in Opposition to Defendants['] Motion to Dismiss (Response; Doc. 92), and also submitted exhibits, see Doc. 92-1.

Also before the Court is Sheffield's request to file a third amended complaint. See Motion for Leave to File [Third] Amended Complaint (Motion to Amend; Doc. 91). The Corrections Defendants oppose this request. See Response to Plaintiff's Motion for Leave to File Third Amended Complaint (Response II; Doc. 95). The Motions are ripe for review.[3]

---

[3] On August 29, 2024, the Court directed Sheffield to show cause why this case should not be dismissed without prejudice as an abuse of the judicial process for his failure to comply with the Local Rules and orders of the Court. See Order to Show Cause (Doc. 88) at 4–5. In response, Sheffield submitted a Motion to Excuse Plaintiff's Inartful Pleadings (Doc. 98), asserting that he is unskilled in the law and moved for clarification of the Local Rules but never received a response from the Court. Considering his response, the Court grants the Motion (Doc. 98) to the extent that the Order to Show Cause (Doc. 88) will be discharged.

## II. Sheffield's Allegations[4]

Sheffield alleges that on January 4, 2024, "security had set up a[] murder by having gang members dress out in white sheets covering themselves from head to toe to run into [Sheffield's] assigned cell and beat, stab[] and rape him for filing injunctions for protection . . . ." SAC at 8. According to Sheffield, the gang members stood outside his cell "waiting for an[] opportunity to run in[] and commit[] this ritual style murder . . . ." Id. at 9. "After being held off into the hours of January 5, 2024," Sergeant Fowler, Sergeant Williams, and Lieutenant John Doe approached Sheffield's cell. Id. They advised Sheffield that if he did not allow the inmates into his cell, Sergeant Fowler, Sergeant Williams, and Lieutenant John Doe "were coming in to do it . . . ." Id. Sheffield refused, and they responded, "F*** that were [sic] going in[], I've been wanting his a** anyway!" Id.

Sheffield asserts that approximately ten minutes later, Sergeant Fowler, Sergeant Williams, Sergeant Robinson, Lieutenant John Doe, and two other John Does entered his cell. Id. Sergeant Fowler grabbed Sheffield's head and slammed it into the concrete while Sergeant Williams punched Sheffield in the

---

[4] In considering the Corrections Defendants' Motion to Dismiss, the Court must accept all factual allegations in the SAC as true, consider the allegations in the light most favorable to Sheffield, and accept all reasonable inferences that can be drawn from such allegations. Holland v. Carnival Corp., 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the SAC, and may well differ from those that ultimately can be proved.

eyes, forehead, jaw, and neck. Id. at 10. He alleges that throughout the assault, the Corrections Defendants threatened to kill him and used racial slurs. Id. Sheffield maintains he did not resist. Id.

"Several minutes later [Sheffield] was snatched off the cell floor and dragged . . . to [the] medical area leaking blood from [his] right eye area . . . ." Id. Sheffield alleges he received eight sutures over his right eyebrow and ten Tylenol. Id. at 11. However, according to Sheffield, Dr. Acevedo "has refused to refer [him] to an[] eye specialist concerning the right eye injury since that date, although [there have been] multiple complaints thereafter." Id.

Based on the above, Sheffield alleges: (1) Sergeants Fowler and Williams violated the Eighth Amendment when they used excessive force; (2) Sergeant Robinson and three John Does violated the Eighth Amendment when they failed to intervene during the use of force; (3) Warden Allen and Colonel Handley violated the Eighth Amendment when they failed to take disciplinary action "to curb the known pattern of physical abuse of inmates by [D]efendants Fowler[] and Williams"; and (4) Dr. Acevedo violated the Eighth Amendment when he was deliberately indifferent to Sheffield's serious medical need. Id. at 12–13. He also brings state law claims of assault, battery, and negligence. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and

original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

### IV. Summary of the Corrections Defendants' Arguments

In their Motion to Dismiss, the Corrections Defendants argue that Sheffield: (1) is not entitled to proceed as a pauper pursuant to 28 U.S.C. § 1915(g), (2) failed to accurately disclose his litigation history, (3) failed to exhaust his administrative remedies, (4) is not entitled to punitive damages,

and (5) fails to state a deliberate indifference claim against Warden Allen and Colonel Handley. <u>See generally</u> Motion to Dismiss.

## V. Exhaustion of Administrative Remedies

### A. Prison Litigation Reform Act (PLRA) Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004); <u>see also</u> <u>Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't</u>, 476 F. App'x 364, 366 (11th Cir. 2012)[5] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). Therefore, the Court turns first to the question of whether Sheffield properly exhausted his administrative remedies. It is well settled that the PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. <u>See</u> 42 U.S.C. § 1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). A prisoner such as Sheffield, however, is not required to plead exhaustion. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, the United

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

States Supreme Court has recognized that "failure to exhaust is an affirmative
defense under the PLRA[.]" Id. Notably, exhaustion of available administrative
remedies is "a precondition to an adjudication on the merits" and is mandatory
under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not
only is there an exhaustion requirement, the PLRA "requires proper
exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal
> with parties who do not want to exhaust,
> administrative law creates an incentive for these
> parties to do what they would otherwise prefer not to
> do, namely, to give the agency a fair and full
> opportunity to adjudicate their claims. Administrative
> law does this by requiring proper exhaustion of
> administrative remedies, which "means using all steps
> that the agency holds out, and doing so properly (so
> that the agency addresses the issues on the merits)."
> Pozo,[6] 286 F.3d, at 1024 (emphasis in original).

Woodford, 548 U.S. at 90. And "[p]roper exhaustion demands compliance with
an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not
engraft an unwritten 'special circumstances' exception onto the PLRA's
exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one
baked into its text: An inmate need exhaust only such administrative remedies
as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an

---

[6] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322–23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, the Corrections Defendants bear "the burden of proving that [Sheffield] has failed to exhaust his available administrative remedies." Id. at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082

> (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record.[7] Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838–39 (11th Cir. 2020). In evaluating whether Sheffield has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

## B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218

---

[7] In an unpublished decision, the Eleventh Circuit suggests that a pro se plaintiff must receive notice of his opportunity to develop the record on exhaustion. See Kinard v. Fla. Dep't of Corr., No. 24-10359, 2024 WL 4785003, at *7 (11th Cir. Nov. 14, 2024) (per curiam). Here, the Court notified Sheffield that he had forty-five days to respond to any motion to dismiss. See Order (Doc. 34) at 3. Sheffield responded to the Corrections Defendants' Motion to Dismiss and addressed the exhaustion argument by relying on grievance records that he attached to his Amended Complaint and SAC. See Response at 4–5. He does not request discovery or suggest that he needs any additional information to respond to the Motion to Dismiss. As such, Sheffield has received notice and an opportunity to develop the record on exhaustion.

(stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within

twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### C. The Parties' Positions Regarding Exhaustion

The Corrections Defendants argue that Sheffield failed to complete the FDC's three-step grievance process before he filed the initial Complaint on January 18, 2024. See Motion to Dismiss at 10–15. In support of their failure to exhaust assertions, the Corrections Defendants submit declarations from Jeffrey R. McClellan, Assistant Warden of Programs at Florida State Prison, and Lawanda Sanders-Williams, FDC Operation Analyst. See Docs. 86-2, 86-3.

In his declaration, McClellan states that between January 5, 2024, and January 18, 2024, Sheffield filed only two informal grievances and one formal grievance. Doc. 86-2 at 1. However, "[n]one of the grievances . . . complain of excessive use of force on January 5, 2024." Id. The grievance log attached to McClellan's declaration confirms that the three grievances concerned medical and confiscation of personal property. See id. at 4–5. In her declaration, Sanders-Williams states that between January 5, 2024, and January 18, 2024, Sheffield filed "no appeals of any kind." Doc. 86-3 at 1. The grievance log attached to Sanders-Williams's declaration confirms that Sheffield filed no appeal grievances during that time. See id. at 3.

Sheffield responds that he properly exhausted his available administrative remedies. See Response at 4–5. He contends that he submitted an informal grievance on January 9, 2024, a formal grievance on January 12,

13

2024, and a grievance "to the Secretary" on January 19, 2024, but he never received responses to them. Id. at 4. According to Sheffield, he only received a response to a medical grievance that he submitted on January 12, 2024. Id. In support of his assertion, Sheffield seemingly refers to the grievances attached to his Amended Complaint (AC; Doc. 13), SAC, and Response. See id. at 4–5. Sheffield further argues that "[g]rievance coordinators and asst. warden of program[] refuse to acknowledge staff assaults," and as a result, the grievance process was unavailable to him. Id. at 4.

### D. <u>Turner</u> Step One

Under the first step of the <u>Turner</u> analysis, the Court must review the allegations in the Motion to Dismiss and Response and accept as true Sheffield's allegations. See <u>Whatley</u>, 802 F.3d at 1209. If Sheffield's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. See <u>id.</u>

Accepting Sheffield's view of the facts as true, the Court finds dismissal of the claims against the Corrections Defendants for lack of exhaustion is not warranted at the first step of <u>Turner</u>. Thus, the Court proceeds to the second step of the two-part process and considers the Corrections Defendants' arguments about exhaustion and makes findings of fact.

### E. <u>Turner</u> Step Two

As dismissal would not be appropriate based on the allegations in the

Motion to Dismiss and Response, the Court next turns to the second prong of the <u>Turner</u> analysis and finds Sheffield had available administrative remedies that he failed to properly exhaust before filing this action. Sheffield maintains that he submitted grievances regarding the January 5th use of force, but he never received responses to them. <u>See</u> Response at 4. However, reliable evidence, such as sworn declarations and grievance logs, supports the conclusion that Sheffield never submitted any relevant grievances at the institutional or appeal levels. <u>See</u> Docs. 86-2, 86-3. And as evidenced by the attachments to his AC, SAC, and Response, Sheffield has filed numerous grievances since January 11, 2024, that produced responses. <u>See</u> AC at 22–32, 35–36, Docs. 83-1 at 1–2, 6–9, 92-1 at 1–8. Sheffield's history of filing grievances, by itself, is "evidence that the defendants did not make administrative remedies unavailable to him or . . . destroy his grievances." <u>Whatley v. Smith</u>, 898 F.3d 1072, 1083 (11th Cir. 2018). Further, as established by McClellan and Sanders-Williams's sworn declarations, a grievance system was in place at FSP and the appeal level at the relevant time. Docs. 86-2 at 2, 86-3 at 2. Considering the pleadings and the record evidence, the Court credits the Corrections Defendants' declarations and exhibits over Sheffield's assertions and exhibits.

Insofar as Sheffield argues that the grievances attached to his AC, SAC, and Response demonstrate exhaustion, his argument is unavailing. Indeed,

Sheffield submitted most of these grievances after he filed the initial Complaint. See AC at 22–23, 26–35, Docs. 83-1 at 1–9, 92-1 at 1–7. "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Sheffield filed his Complaint on January 18, 2024. Complaint at 1; see Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993) (applying the mailbox rule to a pro se prisoner's § 1983 complaint). Accordingly, any grievances filed after that date are not pertinent to the Court's determination of whether Sheffield satisfied the PLRA's exhaustion requirement. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint.").

Moreover, those grievances that Sheffield did submit before initiating this action do not complain of the January 5th use of force. See AC at 25 (grieving the failure to remove sutures over his right eye), 36 (same), Doc. 92-1 at 8 (grieving confiscation of personal property). Those grievances instead focused on the sufficiency of medical care after the incident and the loss of personal property. See id. As such, they did not suffice to alert officials to the excessive force claims raised in the SAC. See Chandler, 379 F.3d at 1287 (explaining that the purpose of administrative exhaustion "is to put the

[administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues." (quotations and citation omitted) (alterations in original)). Considering the above, the Corrections Defendants' Motion to Dismiss is due to be granted based upon the contention that Sheffield failed to exhaust his administrative remedies.[8]

## VI. Sua Sponte Frivolity Review

The Court is obligated to conduct an independent frivolity review of Sheffield's deliberate indifference claim against Dr. Acevedo. The Prison Litigation Reform Act requires the Court to dismiss a case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511

---

[8] Because the Court has determined that Sheffield did not exhaust his administrative remedies using the FDC's three-step grievance process, the Court will not address the Corrections Defendants' remaining arguments. Moreover, based on Sheffield's failure to exhaust his administrative remedies regarding his excessive force claims, the Court will dismiss those claims against the three John Does as well. See Escobar v. Crosby, 363 F. Supp. 2d 1361, 1366 (S.D. Fla. 2005) (noting dismissal of prisoner's claims against unserved defendants was appropriate based in part on prisoner's failure to exhaust administrative remedies).

U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence standard" in determining whether an official acted with deliberate indifference to that serious medical need. See Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) ("To establish deliberate indifference, a plaintiff must demonstrate that the prison officials (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence.") (internal quotations omitted)); see also Wade v. McDade, 106 F.4th 1251, 1255 (11th Cir. 2024). Recently, however, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in Farmer and clarified that courts in this circuit should apply the "subjective recklessness" standard as used in criminal law. See Wade, 106 F.4th at 1253.

Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [Farmer, 511 U.S. at 834].
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844–45.

Id. at 1262 (enumeration and emphasis omitted).[9]

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." Swain, 961 F.3d at 1285. Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). The

---

[9] The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in Wade, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with Wade, "they should continue to be cited as binding precedent." Wade, 106 F.4th at 1265 (Jordan, J., concurring).

Eleventh Circuit has also noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Here, Sheffield's allegations of inadequate medical care do not amount to a constitutional violation. Sheffield maintains that he received sutures and Tylenol for the injury to his right eye, but Dr. Acevedo did not refer him to an eye specialist. See SAC at 11. According to Sheffield, Dr. Acevedo's failure to refer him to a specialist constitutes deliberate indifference. See id. at 13. But, as pled, these allegations amount to no more than a difference in medical opinion between Dr. Acevedo and Sheffield as to the appropriate course of treatment, which does not constitute deliberate indifference. See Harris v. Prison Health Servs., 706 F. App'x 945, 952 (11th Cir. 2017) ("[Defendant] provided [plaintiff] with some treatment—an examination in the emergency

room and giving him Tylenol—while [plaintiff] wanted other treatment, such as x-rays, immediately. This alone does not establish deliberate indifference."). Therefore, the Court will dismiss Sheffield's claim against Dr. Acevedo as frivolous pursuant to 28 U.S.C. § 1915A.

## VII. State Law Claims

In the SAC, in addition to his federal § 1983 claims, Sheffield also asserts claims for relief under Florida state law, including claims of assault, battery, and negligence. See SAC at 12–13. However, the Court has determined that Sheffield's federal § 1983 claims over which the Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 are due to be dismissed. Thus, the Court must now consider whether to continue to exercise supplemental jurisdiction over the remaining state law claims.

"The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004). Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise jurisdiction over a state claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).[10] Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006). However, upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience in deciding whether or not to exercise that jurisdiction." Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994). Upon due consideration, the Court finds that judicial economy and convenience would not be served by retaining jurisdiction over Sheffield's state law claims. Thus, the Court declines to exercise supplemental jurisdiction over these claims.

For the reasons set forth above, the Court has determined that the § 1983 claims in the SAC, over which the Court has original jurisdiction, are due to be dismissed. What remain are uniquely state law claims that are best addressed by the state courts. The Court has not issued any dispositive rulings pertaining to the state law claims, and no discovery deadlines have been set. Thus, the procedural posture of the case weighs in favor of declining jurisdiction to allow

---

[10] In § 1367, Congress codified the concepts of pendent and ancillary jurisdiction under the umbrella label of supplemental jurisdiction. Artis v. District of Columbia, 583 U.S. 71, 74 (2018).

the case to proceed fully in state court. Moreover, when, as here, the federal claims are dismissed prior to trial, the Eleventh Circuit Court of Appeals has "encouraged district courts to dismiss any remaining state claims." Raney, 370 F.3d at 1089; Busse v. Lee Cnty., 317 F. App'x 968, 973–74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial."); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Upon consideration of the § 1367 factors and the "traditional rationales for pendent jurisdiction, including judicial economy and convenience," see Palmer, 22 F.3d at 1569, the Court declines to exercise supplemental jurisdiction over Sheffield's remaining state law claims. Accordingly, Sheffield's state law claims, including those for assault, battery, and negligence, are due to be dismissed without prejudice to Sheffield refiling these claims in the appropriate state court.

23

## VIII. Motion to Amend

Finally, Sheffield requests leave to file a Third Amended Complaint
(TAC; Doc. 93) because he "has determined that the name[s] of two John Doe
Defendants [are] Captain Randall Smith and Captain Mason." <u>See</u> Motion to
Amend at 1. Because Sheffield has twice been permitted leave to amend, he
may only amend with the Court's leave. <u>See</u> Fed. R. Civ. P. 15(a)(2). "Although
[l]eave to amend shall be freely given when justice so requires, a motion to
amend may be denied on numerous grounds such as undue delay, undue
prejudice to the defendants, and futility of the amendment." <u>Haynes v. McCalla
Raymer, LLC</u>, 793 F.3d 1246, 1250 (11th Cir. 2015) (alteration in original)
(quotations and citation omitted). Here, amendment would be futile as the
Court has determined Sheffield failed to exhaust his administrative remedies
with regards to his excessive force claim before filing suit. Amendment will not
change this historical fact. <u>See</u> <u>Smith v. Terry</u>, 491 F. App'x 81, 83 (11th Cir.
2012) (per curiam) (finding prisoner's supplemental complaint could not cure
his failure to satisfy the exhaustion requirement because it "did not change the
important historical fact: his administrative remedies were unexhausted when
he filed his original complaint.").

As to his deliberate indifference claim against Dr. Acevedo, the proposed
TAC suffers from the same deficiency as the SAC. <u>See</u> TAC at 13, 15. Sheffield's
proposed amendment, liberally construed, still does not support a viable claim

24

of deliberate indifference because he alleges a mere disagreement as to his course of medical treatment. Therefore, Sheffield's Motion to Amend is due to be denied.

Accordingly, it is now **ORDERED:**

1.    Plaintiff Andre Sheffield's Motion to Excuse Plaintiff's Inartful Pleadings (Doc. 98) is **GRANTED to the extent** that the Order to Show Cause (Doc. 88) is **DISCHARGED**.

2.    Defendants Sergeant Austin Fowler, Sergeant Patrick Williams, Sergeant D. Robinson, Warden Davis Allen, and Colonel Matthew Handley's Motion to Dismiss (Doc. 86) is **GRANTED to the extent** the Corrections Defendants seek dismissal of the claims against them for Sheffield's failure to exhaust his administrative remedies. In all other respects, the Motion is denied.

3.    Sheffield's claim against Defendant Angel Acevedo is **DISMISSED** pursuant to 28 U.S.C. 1915A(b), and his state law claims are **DISMISSED without prejudice** to refiling in the appropriate state court.

4.    Sheffield's Motion to Amend (Doc. 91) is **DENIED**.

5.    Sheffield's Second Amended Complaint (Doc. 83) is **DISMISSED without prejudice** as to all Defendants.

6.    The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of January, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 1/9
c:    Andre L. Sheffield, #116194
        Counsel of record